**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF GEORGIA**
**MACON DIVISION**

ANDREW HOWARD BRANNAN,    :
                               :
           Plaintiff,    :
                               :      CASE NO. 5:13-CV-0454 -MTT-MSH
           VS.    :          42 U.S.C. § 1983
                               :
Commissioner BRIAN OWENS, et. al.   :
                               :
          Defendants.    :
_____

## ORDER & RECOMMENDATION

Plaintiff Andrew Howard Brannan, a state prisoner currently confined at the Georgia Diagnostic and Classification Prison ("GDCP"), in Jackson, Georgia, has filed a *pro se* civil rights complaint in this Court seeking relief under 42 U.S.C. § 1983. Plaintiff is proceeding in this action *in forma pauperis* and has paid a partial filing fee as required by 28 U.S.C. § 1915(b)(1). Plaintiff is also obligated to pay the remaining balance of this Court's $350.00 filing fee using the payment plan described in 28 U.S.C. § 1915(b) and ordered herein. For this reason, the Clerk of Court is **DIRECTED** to send a copy of this Order to the warden and/or business manager of GDPC.

Plaintiff's Complaint is now ripe for a preliminary review. 28 U.S.C. § 1915A(a). After construing all allegations in the Complaint liberally and in the light most favorable to Plaintiff, the undersigned finds that Plaintiff has sufficiently alleged Eighth Amendment claims against Defendants **Rowles**, **Thorneloe**, **Humphrey**, **Owens**, **Scott** and **Fowlks**. These claims may go forward for further factual development. It is **RECOMMENDED**,

however, that all other claims and defendants discussed herein be **DISMISSED** without prejudice, pursuant to §1915A(b)(1), for failure to state a claim.

## STANDARD OF REVIEW

Because Plaintiff is a prisoner "seeking redress from a governmental entity or [an] officer or employee of a governmental entity," this Court is required to conduct a preliminary screening of his Complaint. *See* 28 U.S.C. § 1915A(a).   In so doing, the district court must accept all factual allegations in the complaint as true. *Brown v. Johnson*, 387 F.3d 1344, 1347 (11th Cir. 2004).   *Pro se* pleadings are also "held to a less stringent standard than pleadings drafted by attorneys" and will be "liberally construed." *Tannenbaum v. United States*, 148 F.3d 1262, 1263 (11th Cir. 1998).   A *pro se* pleading is, nonetheless, subject to dismissal prior to service if the court finds that the complaint, when construed broadly and viewed in the light most favorable to the plaintiff, fails to state a claim upon which relief may be granted.   *See* 28 U.S.C. §1915A(b)(1).

A complaint fails to state a claim when it does not include "enough factual matter (taken as true)" to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests[.]" *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-56, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007).   "Threadbare recitals of the elements of cause of action, supported by mere conclusory statements do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 663, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009).   To survive a preliminary review, a complaint must "raise the right to relief above the speculative level" by alleging specific facts and creating "a reasonable expectation" that discovery will reveal the evidence

2

necessary to prove a claim.   *See Twombly*, 550 U.S. at 555-56.

## PRELIMINARY REVIEW OF PLAINTIFF'S CLAIMS

The present action arises out of Plaintiff's confinement at GDCP.   In his Complaint, Plaintiff lists five "counts" in which he alleges that prison officials (1) discriminated against him on basis of his disability; (2) deprived him of his right to access to the courts; (3) subjected him to the use of excessive force; (4) deprived him of his liberty without due process; and (5) acted with deliberate indifference to his serious medical needs.   Plaintiff attempts to state his claims against fourteen individual defendants and seeks both money damages and equitable relief.

A.   Count I—Discrimination on the Basis of Disability & Denial of Mental Health Treatment

In Count I of his Complaint, Plaintiff states that he is being "*subjected to discrimination based on his disability*" in violation of Title II of the Americans with Disabilities Act (ADA), 42 U.S.C. § 12131 *et seq*.   Compl. at ¶¶ 25-27.   Plaintiff, a death row inmate, alleges that he has been diagnosed and suffers with "post-traumatic stress disorder" (PTSD), "anxiety," and "bipolar disorder" and that prison officials have denied him access to psychiatric medications and "rehabilitative programs" (presumably programs related to mental health treatment).   According to Plaintiff, prison physicians (Defendants Rowles and Thorneloe) denied him treatment for his "disability" *because* the Georgia Department of Corrections (1) "does not have a system in place for those prisoners whom are under a death sentence . . . [and] seriously suffering from severe mental health

3

illness or disorder and other mental impairment," and (2) has a "policy" prohibiting physicians from providing Plaintiff "with any programs or activity due to [his] death sentence." *Id.* at ¶¶ 10, 12-13.   The Complaint further alleges that Plaintiff's conditions have worsened because of this lack of treatment and that other inmates "not under a death sentence" are receiving the very treatment he requires, i.e., mental health medication and access to rehabilitative programs.   *Id.* at ¶ 12.

Even if Plaintiff's allegations are broadly construed and it assumed that Plaintiff's diagnoses qualify him for protection under the ADA, Count I does not state a claim for violation of the ADA.   The ADA provides that "no qualified individual with a disability shall, *by reason of such disability*, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132 (emphasis added).   Here, Plaintiff complains that he is being denied access to services, programs, and activities, not *because of* a disability, but *because* he his "under a death sentence." *Id.* at ¶¶ 10, 12-13. Discrimination on the basis of a prisoner's sentence or classification does not violate the ADA.   It is thus **RECOMMENDED** that Plaintiff's ADA claims be **DISMISSED** under 28 U.S.C. § 1915A(b)(1) for failure to state a claim.

The undersigned does find, however, that Plaintiff's allegations may state an Eighth Amendment claim for deliberate indifference to his serious medical needs. "In this circuit, it is established that psychiatric needs can constitute serious medical needs and that the quality of psychiatric care one receives can be so substantial a deviation from accepted

4

standards as to evidence deliberate indifference to those serious psychiatric needs." *Steele v. Shah*, 87 F.3d 1266, 1269 (11th Cir. 1996). *See also, Willacy v. County of Brevard*, No. 04-cv-1666, 2007 WL 1017657, at *9 (assuming, on summary judgment, that PTSD qualified as a serious medical need) (M.D. Fla. March 30, 2007).

Although Plaintiff's Complaint does not expressly refer to an Eighth Amendment claim in this context, the Court is still required to consider potentially mislabeled claims if the facts to state a cognizable claim "are clearly present in a *pro se* complaint." *Ford v. Hunter*, 534 F. App'x 821, 825 (11th Cir. 2013). *See also, O'Berry v. State Attny's Office*, 241 F. App'x 654, 657 (11th Cir. 2007) (stating that the district court is "obligated, as part of its screening protocol, to seek out and identify any and all cognizable claims of the plaintiff"). The undersigned will, therefore, allow Eighth Amendment claims against Defendants Rowles, Thorneloe,[1] Humphrey, and Owens to go forward for further factual development. In the event that Plaintiff does not wish to proceed with the claims identified, he is **DIRECTED** to notify the Court within fourteen (14) days of being served a copy of this Order.

Count I of Plaintiff's Complaint also alleges that inmates "not under a death sentence" are receiving psychiatric medications and treatment for PTSD, anxiety, and/or bi-polar disorder. Compl. at ¶ 26. In the event that an equal protection claim should be

---

[1] In Count V of his Complaint, Plaintiff states that "all defendants *except* Rowles and Thorneloe acts and omissions were wanton, malicious, sadistic, and with deliberate indifference to [his] serious medical needs." Compl. at ¶ 41 (emphasis added). The Court will liberally construe Plaintiff's allegations and assume that this statement is only to be considered in the context of Count V.

considered, the undersigned finds that Plaintiff's allegations fail to state a colorable claim. Plaintiff does not allege any fact suggesting that he has received disparate treatment because of a constitutionally protected interest, such as race, gender, or religion. *See Jones v. Ray*, 279 F.3d 944, 946–47 (11th Cir. 2001).   Nor does he identify facts sufficient to state a possible "class of one" equal protection claim. *See Campbell v. Rainbow City, Ala.*, 434 F.3d 1306, 1314 (11th Cir. 2006)).   The facts necessary to support an equal protection claim are thus not present in his Complaint, and if Plaintiff intended to bring an equal protection claim based on the alleged denial of mental health treatment, it is **RECOMMENDED** that such claims be **DISMISSED**.

B.    Count II - Denial of Access to the Courts

Count II of Plaintiff's Complaint states that Plaintiff "has been denied access to the court in violation of the First Amendment." Compl. at ¶¶ 28-30. In the body of his Complaint, Plaintiff alleges that Warden Humphrey has created, and Unit Manager Scott has enforced, a policy of preventing death row inmates from having access to the law library.   Plaintiff claims that he is not allowed access to law books, is not provided legal research assistance, and is only permitted access to a computer program called "Lexis Nexis," which he does not know how to use.   *See* Compl. at ¶ 15.

Although it may be contrary to Plaintiff's understanding of constitutional law, prisoners have no "abstract, freestanding right to a law library or legal assistance." *Lewis v. Casey*, 518 U.S. 343, 351 (1996).   To state a First Amendment claim, a prisoner alleging a lack of access to a law library must show that he has suffered an "actual injury." *Id.*   In

6

other words, a prisoner would have to demonstrate that the lack of access to the law library actually hindered his efforts to pursue a specific legal claim that challenged either his conviction (directly or collaterally) or conditions of confinement. *Id.* at 354-55.   Plaintiff has not alleged any such injury in his Complaint.   The vague allegation that Plaintiff has been prevented from acting "*pro se* in a non-frivolous case," Comp. at ¶ 15, is not sufficient to carry a First Amendment claim. *See Iqbal*, 556 U.S. at 663 ("Threadbare recitals of the elements of cause of action, supported by mere conclusory statements do not suffice.").   It is thus **RECOMMENDED** that Plaintiff's First Amendment claims against Defendants Humphrey and Scott (Count II) be **DISMISSED**.

C.      Count III – Excessive Force

In Count III of his Complaint, Plaintiff states that Defendants Humphrey, Carter, Clark, Parks, Walker, Jackson, Brown, and Roland violated his Eight Amendment rights through either the use of excessive force or a failure to intervene and protect him from the same.   *See* Compl. at ¶32.   Plaintiff alleges that, on January 15, 2013, a "shake down" was conducted in his unit and that the loud noises cause him to have a "flashback" to combat in Vietnam and suffer a "psychotic breakdown."   The prison's "CERT squad" (apparently consisting of Defendants Carter, Clark, Parks, Walker, and Jackson) arrived and was accompanied by Defendants Humphrey, Brown, and Roland.   According to the Complaint, Plaintiff was first handcuffed and told to get on his knees.   The "CERT squad" then allegedly "slammed" him to the floor – breaking his collar bone.

It is clear that the Eighth Amendment "prohibits the unnecessary and wanton

7

infliction of pain" on inmates.  *Ort v. White*, 813 F.2d 318, 321 (11th Cir.1987) (citing *Rhodes v. Chapman*, 452 U.S. 337, 346 (1981)).   It is equally clear that if a prison officer "fails or refuses to intervene when a constitutional violation such as an unprovoked beating takes place in his presence," that officer is also directly liable for an Eighth Amendment violation.  *Byrd v. Clark*, 783 F.2d 1002, 1007 (11th Cir. 1986).

The details of the event giving rise to Plaintiff's claims are not clear, however. Though Plaintiff names multiple defendants in Count III, Plaintiff fails to make specific allegations against any single defendant.   Plaintiff merely alleges that the "CERT squad" slammed him to the floor while other "officers that were present at the time just stood there and did nothing to stop the assault."  *See* Compl. at ¶16.   The Complaint does not allege facts to identify which members of the "CERT squad" actually struck Plaintiff or suggest how any other officer present (prior to this sudden single act) had an opportunity to intervene and prevent or curtail the alleged constitutional violation.

Thus, even if construed liberally, Plaintiff's allegations fail to contain "enough factual matter" to give each defendant fair notice of what the claim against him is and the grounds upon which it rests.  *See Twombly*, 550 U.S. at 555-56.   It is accordingly **RECOMMENDED** that the Eighth Amendment claims attempted in Count III of Plaintiff's Complaint be **DISMISSED** with leave to amend.   If Plaintiff can provide the Court with additional details and specify the actions each defendant took (or failed to take) that allegedly violated his constitutional rights, he should amend his Complaint to add these factual allegations within fourteen (14) days of being served a copy of this Order.

8

D.     Count IV – Denial of Due Process

In Count IV of the Complaint, Plaintiff states that he was denied "due process of law under the Fourteenth Amendment" when the unit manager, Defendant Scott, placed in him in punitive confinement for "a period of about 1 month and a half" without "any notification of charges . . . []or any hearing." Compl. at ¶¶ 35.  In the body of his Complaint, Plaintiff alleges that Defendant Scott abruptly transferred him out of the medical section of the prison and into disciplinary segregation the day after he was assaulted by the CERT squad.  Plaintiff was apparently "not given any reasons" why he was moved or provided a disciplinary hearing.  He alleges that Scott transferred him, for the purpose of disciplinary sanction, to a filthy solitary confinement cell, with poor ventilation, no heat, a leaky toilet, and only a mattress on the floor for sleeping.

Plaintiff now contends that Scott's actions violated his right to due process.  The Due Process Clause "does not directly protect an inmate from changes in the conditions of his confinement" or create a constitutionally-protected interest "in being confined to a general population cell, rather than the more austere and restrictive administrative segregation quarters.'" *Chandler v. Baird*, 926 F.2d 1057, 1060 (11th Cir.1991) (quoting *Hewitt v. Helms*, 459 U.S. 460, 466, 103 S.Ct. 864, 869, 74 L.Ed.2d 675 (1983)).  Thus, to state a due process claim, a prisoner must allege more than that he was merely confined in punitive segregation without a disciplinary hearing.  *See Sandin v. Conner*, 515 U.S. 472, 476, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995).  The prisoner must also show that he in fact had a right to receive some measure of due process due to the nature of his disciplinary

9

sanction.   The protections of the Due Process Clause are only evoked in cases where the punitive confinement (1) affects the duration of the prisoner's sentence or (2) imposes "an atypical and significant hardship" on the prisoner "in relation to the ordinary incidents of prison life."   *Id.* at 486.

Here, Plaintiff's term of punitive confinement was relatively short – approximately 90 days – and it in no way altered the duration of his sentence.   "Short sentences of disciplinary confinement do not tend to present the kind of atypical and significant deprivation to implicate the Due Process Clause absent a showing that the prisoner's isolation worked a major disruption in the [his] environment when compared to his placement in the general population."   *Taylor v. McSwain*, 335 F. App'x 32, 34 (11th Cir. 2009) (citing *Sandin*, 515 U.S. at 486).   *See also, e.g., Rodgers v. Singletary*, 142 F.3d 1252 (11th Cir. 1998) (no liberty interest implicated by two month period in administrative confinement); *Sealey v. Giltner*, 197 F.3d 578, 587–89 (2d Cir. 1999) (due process not implicated when in administrative segregation for 101 days).   Nothing in Plaintiff's Complaint suggests that Plaintiff's term in solitary confinement caused a "major disruption" in his environment (when compared to the conditions he would have experienced in general population) or that the deprivations he endured were otherwise atypical of those discomforts normally associated with prison life.   *See Sandin*, 515 U.S. at 486. *See also*, *Rhodes v. Chapman*, 452 U.S. 337, 349, 101 S.Ct. 2392, 69 L.Ed.2d 59 (1981) ("prisons . . . which house persons convicted of serious crimes cannot be free of discomfort").   Plaintiff's allegations thus fail to state a due process claim.

10

The undersigned also notes that Plaintiff's allegations insinuate an Eighth Amendment claim.  Plaintiff alleges that Scott transferred him to solitary confinement "for the sole purpose [of] inflict[ing] unnecessary and wanton pain" and with the knowledge that it would be "extremely hard" for Plaintiff, who had suffered a broken collarbone, to "get situated and/or accommodated" after this transfer.  Compl. at ¶ 19.  Plaintiff then alleges that, because of his injury, he was unable to lift his mattress or make his bed and was thus required to sleep on a mattress atop a filthy floor in a cold cell with poor ventilation and a leaky toilet.  *See id.*

To state an Eighth Amendment conditions of confinement claim, a prisoner must allege specific facts to show that his conditions were objectively and sufficiently "serious," or "extreme," so as to constitute a denial of the "minimal civilized measure of life's necessities." *Thomas v. Bryant*, 614 F.3d 1288, 1304 (11th Cir. 2010).  This standard is met when the challenged conditions pose "an unreasonable risk of serious damage to [the prisoner's] future health or safety," *Chandler v. Crosby*, 379 F.3d 1278, 1289 (11th Cir. 2004), or if society otherwise "considers the risk that the prisoner complains of to be so grave that it violates contemporary standards of decency to expose anyone unwillingly to such a risk." *Helling v. McKinney*, 509 U.S. 25, 37, 113 S.Ct. 2475, 125 L.Ed.2d 22 (1993).

Even when construed liberally and read in the light most favorable to Plaintiff, the factual allegations in Plaintiff's Complaint do not describe the sort of "extreme" deprivation that an Eighth Amendment conditions of confinement claim demands.  *See Hudson v. McMillian*, 503 U.S. 1, 9, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992).  *See also,*

11

*e.g., Alfred v. Bryant*, 378 F. App'x 977, 980 (11th Cir. 2010) (living with a toilet that occasionally overflows "is unpleasant but not necessarily unconstitutional"); *Smith v. Copeland*, 87 F.3d 265, 268–69 (8th Cir.1996) (overflowed toilet in cell for 4 days was not unconstitutional); *Brown v. Withrow*, 985 F.2d 559, 559 (6th Cir. 1993) (having rats, roaches and ants present in the cell is not below the constitutional standard); *Hamm v. DeKalb County*, 774 F.2d 1567, 1575 (11th Cir. 1985) (requiring a prisoner to sleep on a mattress on the floor is not unconstitutional); *Chandler v. Crosby*, 379 F.3d 1278, 1298 (11th Cir. 2004) (allegations of excessive temperatures and inadequate ventilation did not state a claim).   Plaintiff's allegations thus also fail to state an Eighth Amendment claim.

It is accordingly **RECOMMENDED** that both Plaintiff's due process claim (Count IV) and any Eighth Amendment claim based on the conditions of his confinement be **DISMISSED** under 28 U.S.C. § 1915A(b)(1).

E.      Count V – Denial of Medical Care

Finally, in Count V of the Complaint, Plaintiff alleges that both Unit Manager Scott and prison physician, Dr. Fowlks, have been deliberately indifferent to his serious medical needs by delaying and denying medical treatment.   The Complaint alleges (1) that Defendant Fowlkes repeatedly refused to provide Plaintiff with pain medication for his broken collarbone, (2) that Defendants delayed four hours before transporting Plaintiff to the hospital for treatment, and (3) that Defendant Scott removed Plaintiff from the medical section of the prison the day after his injury ("despite physician's orders"), put him in solitary confinement, and subsequently failed to assist Plaintiff in getting pain medication.

12

To state an Eighth Amendment claim based on a denial of medical care, a prisoner must allege facts to show (1) that he has an objectively serious medical need which poses a substantial risk of serious harm if left unattended; and (2) that the defendant was "deliberately indifferent" to that need.   *Taylor v. Adams*, 221 F.3d 1254, 1257 (11th Cir. 2000).   A prison official is deliberately indifferent to an inmate's needs if he had subjective knowledge of a risk of serious harm to the plaintiff and disregarded that risk. Bozeman v. Orum, 422 F.3d 1265, 1272 (11th Cir. 2005).   *See also*, *Adams v. Poag*, 61 F.3d 1537, 1543–44 (11th Cir. 1995) ("[K]nowledge of the need for medical care and an intentional refusal to provide that care constitutes deliberate indifference.").

While, in this case, it is not entirely clear that Plaintiff was denied all pain medication (and not just the medication of his choice) or that the transfer to solitary confinement cause Plaintiff to suffer any injury, the undersigned will, when reading these allegations in Plaintiff's favor, allow his Eighth Amendment claims against Defendants Fowlks and Scott to go forward for further factual development.   Prison officials may of course violate the Eighth Amendment by failing, even if only for a few hours, to treat an inmate's pain.   *See Brown v. Hughes*, 894 F.2d 1533, 1538 (11th Cir. 1990) ("With this type of injury, it may be that deliberately indifferent delay, no matter how brief, would render defendants liable as if they had inflicted the pain themselves.").

Plaintiff's Complaint, however, lacks allegations to show which, if any, of the named defendants intentionally delayed Plaintiff's transfer to the hospital after his injury. Count V of Plaintiff's Complaint only states that "all defendants except Owens, Rowles,

and Thorneloe" were deliberately indifferent to Plaintiff's "serious medical needs" by delaying treatment for his broken collarbone by as much as four hours. *See* Compl. at ¶ 40. Plaintiff does not specifically describe how any defendant, other than possibly Dr. Fowlks, can be held responsible for this injury. Plaintiff's conclusory allegation that other officials were "deliberately indifferent to [his] serious medical needs" does not state an Eighth Amendment claim. *See Iqbal*, 556 U.S. at 663 (conclusory allegations of unconstitutional conduct not supported by specific facts fail to state a claim under § 1983). It is therefore **RECOMMENDED** that Plaintiff's Eighth Amendment claims (in Count V) against any defendant other than Defendants Fowlks and Scott be **DISMISSED**.

In the event that it should be addressed, the undersigned further notes that, in the last paragraph of his statement of facts, Plaintiff states that Dr. Fowlks "is known to favor black prisoners" and that if you are "any other race that is not black, Dr. Fowlks will not provide you with the medication that you need, even if the need is obvious." Compl. at ¶ 24. This conclusory assertion implies an equal protection claim.

To state a claim for violation of the Equal Protection Clause, a plaintiff must demonstrate that "(1) he is similarly situated with other prisoners who received more favorable treatment; and (2) his discriminatory treatment was based on some constitutionally protected interest such as race." *Jones v. Ray*, 279 F.3d 944, 946–47 (11th Cir. 2001). Plaintiff's Complaint satisfies neither prong. Beyond his self-serving and conclusory allegation of racial bias, Plaintiff alleges nothing to suggest that the Dr. Fowlks took (or failed to take) any action based on his race. Plaintiff likewise makes no attempt to

14

identify any similarly situated inmate that received more favorable treatment.   Thus, even a liberal interpretation of this *pro se* pleading does not provide a factual basis for an equal protection claim. *See Jones*, 279 F.3d at 947.   Bald assertions that a defendant is violating the equal protection clause or discriminating against an individual, without more, will not support a § 1983 claim.   It is therefore **RECOMMENDED** that any equal protection claim attempted in Count V also be **DISMISSED**.

F.      Defendants "Doctor Baron," "Sergeant Brown," and "Officer Roland"

The undersigned notes that Plaintiff has named "Doctor Baron" as one of the many defendants in the caption of his Complaint, but he makes no reference to this party in his factual allegations.   A complaint fails to state a claim against a named defendant when it fails to allege facts specifically associating that defendant with any alleged constitutional violation.   *See Douglas v. Yates*, 535 F.3d 1316, 1322 (11th Cir. 2008).   It is accordingly **RECOMMENDED** that "Doctor Baron" be **DISMISSED** from this action.   *See Douglas*, 535 F.3d at 1322 (11th Cir. 2008).

## CONCLUSION

After having reviewed Plaintiff's Complaint, as required by 29 U.S.C. § 1915A(a), the undersigned will now allow Plaintiff to go forward with (1) Eighth Amendment claims against Defendants **Rowles**, **Thorneloe**, **Humphrey**, and **Owens** for denial of mental health treatment (Count I); and (2) Eighth Amendment claims against Defendants **Scott** and **Fowlks** for denial of medical care (Count V).   It is **ORDERED** that service be made on these defendants and that they file an Answer, or such other response as may be

15

appropriate under Rule 12 of the Federal Rules of Civil Procedure, 28 U.S.C. § 1915, and the Prison Litigation Reform Act.   Defendants are further reminded of the duty to avoid unnecessary service expenses, and of the possible imposition of expenses for failure to waive service pursuant to Rule 4(d).

It is **RECOMMENDED** that all other claims and parties addressed in this Order be **DISMISSED** without prejudice, pursuant to §1915A(b)(1), for failure to state a claim. Plaintiff may serve and file written objections to these recommendations with the district judge to whom this case is assigned within fourteen days after being served a copy of this Order. 28 U.S.C. § 636(b)(1).

## <u>ORDER FOR SERVICE</u>

As explained above, service is ordered on Defendants Rowles, Thorneloe, Humphrey, Owens, Scott and Fowlks.   The parties are notified of the rules explained below regarding the Court's procedures and discovery.

## DUTY TO ADVISE OF ADDRESS CHANGE

During the pendency of this action, all parties shall at all times keep the Clerk of this Court and all opposing attorneys and/or parties advised of their current address.   Failure to promptly advise the Clerk of any change of address may result in the dismissal of a party's pleadings filed herein.

## DUTY TO PROSECUTE ACTION

Plaintiff is advised that he must diligently prosecute his Complaint or face the possibility that it will be dismissed under Rule 41(b) of the Federal Rules of Civil

Procedure for failure to prosecute.   Defendants are advised that they are expected to diligently defend all allegations made against them and to file timely dispositive motions as hereinafter directed.   This matter will be set down for trial when the Court determines that discovery has been completed and that all motions have been disposed of or the time for filing dispositive motions has passed.

## FILING AND SERVICE OF MOTIONS,
## PLEADINGS, AND CORRESPONDENCE

It is the responsibility of each party to file original motions, pleadings, and correspondence with the Clerk of Court.   A party need not serve the opposing party by mail if the opposing party is represented by counsel.   In such cases, any motions, pleadings, or correspondence shall be served electronically at the time of filing with the Court.   If any party is not represented by counsel, however, it is the responsibility of each opposing party to serve copies of all motions, pleadings, and correspondence upon the unrepresented party and to attach to said original motions, pleadings, and correspondence filed with the Clerk of Court a certificate of service indicating who has been served and where, when service was made, and how service was accomplished.

## DISCOVERY

Plaintiff shall not commence discovery until an answer or dispositive motion has been filed on behalf of Defendants from whom discovery is sought by Plaintiff. Defendants shall not commence discovery until such time as an answer or dispositive motion has been filed.   Once an answer or dispositive motion has been filed, the parties

are authorized to seek discovery from one another as provided in the Federal Rule of Civil Procedures.   Plaintiff's deposition may be taken at any time during the time period hereinafter set out, provided that prior arrangements are made with his custodian. Plaintiff is hereby advised that failure to submit to a deposition may result in the dismissal of his lawsuit under Rule 37 of the Federal Rules of Civil Procedure.

**IT IS HEREBY ORDERED** that discovery (including depositions and interrogatories) shall be completed within 90 days of the date of filing of an answer or dispositive motion by Defendants (whichever comes first) unless an extension is otherwise granted by the Court upon a showing of good cause therefor or a protective order is sought by Defendants and granted by the Court.   This 90-day period shall run separately as to each Defendant beginning on the date of filing of each Defendant's answer or dispositive motion (whichever comes first).   The scheduling of a trial may be advanced upon notification from the parties that no further discovery is contemplated or that discovery has been completed prior to the deadline.

Discovery materials shall <u>not</u> be filed with the Clerk of Court.   No party shall be required to respond to any discovery not directed to him or served upon him by the opposing counsel/party.   The undersigned incorporates herein those parts of the Local Rules imposing the following limitations on discovery: except with written permission of the Court first obtained, INTERROGATORIES may not exceed TWENTY-FIVE (25) to each party, REQUESTS FOR PRODUCTION OF DOCUMENTS AND THINGS under Rule 34 of the Federal Rules of Civil Procedure may not exceed TEN (10) requests to each

party, and REQUESTS FOR ADMISSIONS under Rule 36 of the Federal Rules of Civil Procedure may not exceed FIFTEEN (15) requests to each party.   No party is required to respond to any request which exceed these limitations.

### REQUESTS FOR DISMISSAL AND/OR JUDGMENT

Dismissal of this action or requests for judgment will not be considered by the Court in the absence of a separate motion therefor accompanied by a brief/memorandum of law citing supporting authorities.   Dispositive motions should be filed at the earliest time possible, but in any event no later than thirty (30) days after the close of discovery unless otherwise directed by the Court.

### DIRECTIONS TO CUSTODIAN OF PLAINTIFF

Following the payment of the required initial partial filing fee or the waiving of the payment of same, the Warden of the institution wherein Plaintiff is incarcerated, or the Sheriff of any county wherein he is held in custody, and any successor custodians, shall each month cause to be remitted to the Clerk of this court twenty percent (20%) of the preceding month's income credited to Plaintiff's account at said institution until the $350.00 filing fee has been paid in full. In accordance with provisions of the Prison Litigation Reform Act, Plaintiff's custodian is hereby authorized to forward payments from the prisoner's account to the Clerk of Court each month until the filing fee is paid in full, provided the amount in the account exceeds $10.00.

**IT IS FURTHER ORDERED AND DIRECTED** that collection of monthly payments from Plaintiff's trust fund account shall continue until the entire $350.00 has

19

been collected, notwithstanding the dismissal of Plaintiff's lawsuit or the granting of judgment against him prior to the collection of the full filing fee.

## PLAINTIFF'S OBLIGATION TO PAY FILING FEE

Pursuant to provisions of the Prison Litigation Reform Act, in the event Plaintiff is hereafter released from the custody of the State of Georgia or any county thereof, he shall remain obligated to pay any balance due on the filing fee in this proceeding until said amount has been paid in full; Plaintiff shall continue to remit monthly payments as required by the Prison Litigation Reform Act.  Collection from Plaintiff of any balance due on the filing fee by any means permitted by law is hereby authorized in the event Plaintiff is released from custody and fails to remit payments.  Plaintiff's Complaint is subject to dismissal if he has the ability to make monthly payments and fails to do so.

SO ORDERED and RECOMMENDED, this 7th day of February, 2014.

S/ Stephen Hyles_____
UNITED STATES MAGISTRATE JUDGE